UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD H. MABEE, JR., | |
| Petitioner, | 05 Civ. 04182 (SCR) (MDF) |
| v. | |
| WILLIAM PHILLIPS, Superintendent, Green Haven Correctional Facility, | MEMORANDUM ORDER ADOPTING REPORT & RECOMMENDATION |
| Respondent. | |

**STEPHEN C. ROBINSON, UNITED STATES DISTRICT JUDGE.**

Harold Mabee, proceeding pro se, has filed a petition under 28 U.S.C. § 2254 seeking a writ of habeas corpus. Mr. Mabee was convicted of murder in the second degree, *see* N.Y. PENAL LAW §125.25 subd. 2 (depraved indifference to human life), manslaughter in the second degree, *see* N.Y. PENAL LAW § 125.15, criminal possession of a weapon in the third degree, *see* N.Y. PENAL LAW §265.02, and reckless endangerment in the first degree, *see* N.Y. PENAL LAW § 120.25. His petition raised seven grounds for review: (1) The evidence is insufficient to establish Petitioner's guilt beyond a reasonable doubt and the jury's verdict is contrary to the weight of the evidence; (2) The state trial court's refusal to submit murder in the second degree and manslaughter in the second degree as alternative counts violated Petitioner's right to a fair trial; (3) Three claims of ineffective assistance of trial counsel: (a) trial counsel failed to alert the state trial court to the statutory requirement to submit the homicide counts in the alternative; (b) trial counsel failed to exercise a challenge to a juror who disclosed that she was related to a victim of rape; and (c) the state trial court erred in denying Petitioner's application to relieve his trial attorney and appoint a new attorney to represent him; (4) Petitioner was deprived of the

effective assistance of appellate counsel; (5) The statutory distinction between reckless manslaughter and depraved indifference murder is unconstitutionally vague as applied to Petitioner; (6) The Appellate Division's determination was an unreasonable application of clearly established law as determined by the United States Supreme Court; and (7) Newly discovered evidence, which the courts have unconstitutionally failed to consider, tends to exonerate Petitioner of murder in the second degree. This matter was referred to United States Magistrate Judge Mark D. Fox, who has issued a Report and Recommendation regarding Mr. Mabee's habeas petition. Judge Fox has recommended that this Court dismiss in its entirety Mr. Mabee's habeas petition. Mr. Mabee filed objections, pursuant to 28 U.S.C. § 636(b)(1), to Judge Fox's Report and Recommendation. *See* Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Respondent, William Phillips, filed a response to these objections.

For the reasons set forth in this Memorandum Order, the Court adopts the Report and Recommendation.

## I. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C §636(b)(1)(C). To accept a Report and Recommendation to which no timely objection has been made, a district court need only satisfy itself that "there is no clear error on the face of the record." *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citations omitted). A party may file "*specific* written objections," Fed. R. Civ. P. 72(b), to a Magistrate Judge's proposed findings and recommendations, and, in that case, the district court has an obligation to make a de novo determination as to those portions of the Report and Recommendation to which

objections were made. 28 U.S.C. 636(b)(1); *Grassia v. Scull*, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "de novo determination" in section 636(b)(1)—as opposed to "de novo hearing"—was used by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980). A district court may, in its sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendation. *Id.* Moreover, "[t]o the extent . . . that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harden v. LaClaire*, No. 07 Civ. 4592, 2008 WL 4735231, at *1 (S.D.N.Y. Oct. 27, 2008) (collecting cases).

## II. Mr. Mabee's Objections

Mr. Mabee has made several objections regarding the Magistrate Judge's recommendation. He first objects to Judge Fox's factual finding that the "degree of intoxication reasonably inferable from [witnesses'] testimony suggests that consent concerning the risks associated with asphyxia may well have been at issue because [Jennifer Santiago's] faculties were sufficiently impaired that she was not able to protest his repeated chokings." Report at 15. Mr. Mabee contends that he and the victim, Jennifer Santiago, engaged in consensual sex. He also objects that Judge Fox incorrectly determined that failure to render assistance to the victim constitutes depraved indifference murder, contravening the New York Court of Appeals decisions in *People v. Suarez*, 844 N.E.2d 721, 727 (N.Y. 2005) (per curiam) and *People v. Mancini*, 853 N.E.2d 224, 225 (N.Y. 2006). Mr. Mabee further objects generally that Judge Fox misapplied *Suarez* and *People v. Roe*, 542 N.E.2d 610 (N.Y. 1989), and did not properly distinguish between reckless manslaughter and depraved indifference murder.

Mr. Mabee contends that *Suarez* should apply retroactively to his case. He argues that "New York Court of Appeals decisions that narrow the elements of a crime have been applied retroactively on collateral review," citing *People v. Hill*, 648 N.E.2d 455 (N.Y. 1995) (retroactively applying *People v. Ryan*, 626 N.E.2d 51 (N.Y. 1993), where the New York Court of Appeals held that the term "knowingly" in Penal Law § 220.18 applies not only to the possession of the illicit substance itself, but also to the weight of the substance). He also appears to reference the retroactivity rules established by the United States Supreme Court in *Teague v. Lane,* 489 U.S. 288 (1989), and the decision of the New York Court of Appeals in *People v. Eastman,* 648 N.E.2d 459 (N.Y. 1995), in his argument that new rules of constitutional criminal procedure are applied retrospectively where the new rule alters a bedrock procedural element of criminal procedure which implicates the fundamental fairness and accuracy of the trial. *See Eastman*, 648 N.E.2d at 465.

Mr. Mabee also objects on the ground that his appellate counsel was ineffective "because counsel failed to raise any constitutional claims on appeal. The claims that were raised were insufficient to preserve the constitutional nature of the claim." *See* Obj. Addendum at 7. In particular, he argues that appellate counsel was ineffective for failing to raise on direct appeal the issue of vagueness, Ground Five of his petition, while focusing instead on weaker issues. He believes that the jury could not have understood the mens rea requirements for depraved indifference murder and reckless manslaughter and did not have sufficient guidance in differentiating between the two charges. He argues that the failure to adequately define "the more serious mens rea so that prosecutors and juries do not arbitrarily and erratically determine which crime to prosecute or to apply" violated his due process rights. He contends further that

appellate counsel confused intentional and depraved indifference murder, incorrectly applied principles of law, and failed to cite controlling precedent.

Mr. Mabee also argues that appellate counsel was deficient in misinforming him regarding the issues she planned to raise on appeal, forming an opinion in the case that prevented her from representing him professionally, failing to provide him with a complete copy of the transcript, and refusing to raise a conflict of interest that existed at the trial level. Mr. Mabee asserts that he attempted to have appellate counsel removed, and that her "unreasonable" and "unprofessional" performance was in retaliation for his complaint. Finally, he argues that the issues in his case were so novel that the legal reasoning was not reasonably available to counsel, that the law governing depraved indifference murder had changed and had become confusing in its application, and that these conflicts were evidenced by the eventual overruling of *People v. Register*, 457 N.E.2d 704 (N.Y. 1983). He argues that because the New York Court of Appeals identified *People v. Hafeez*, 792 N.E.2d 1060 (N.Y. 2003) as the beginning of its departure from the *Register* formulation of depraved indifference, *see Policano v. Herbert*, 859 N.E.2d 484, 495 (N.Y. 2006) and *Hafeez* was decided before the judgment against Mr. Mabee became final, *Register* should not apply to his case.

In response to Mr. Mabee's objections, and particularly with regard to his legal sufficiency of the evidence challenge, Mr. Phillips argues that Mr. Mabee is not entitled to retroactive application of the recent New York Court of Appeals decisions, including *People v. Suarez* and *People v. Payne*, 819 N.E.2d 634 (N.Y. 2004), which limited the application of the depraved murder statute after Mr. Mabee's judgment became final. Mr. Phillips argues that the petition should be denied for this reason in addition to the reasons set forth in his opposition to the petition for a writ of habeas corpus and in Judge Fox's Report and Recommendation.

## III. Discussion

This Court has reviewed Judge Fox's comprehensive Report and Recommendation and has determined that there is no clear legal error on the face of the record. Additionally, this Court has considered Mr. Mabee's objections to the Report and Recommendation and has determined, after a *de novo* review, that the Report and Recommendation is correct with respect to those aspects to which he objects. Accordingly, this Court adopts the Report and Recommendation.

### A. Sufficiency of Evidence

In a federal habeas challenge to the evidentiary sufficiency of a state criminal conviction, the district court reviews the evidence in the light most favorable to the state, and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial. 28 U.S.C.A. § 2254; *Ponnapula v. Spitzer*, 297 F.2d 172 (2d Cir. 2002).

Mr. Mabee is correct that failure to summon assistance alone is insufficient to establish depraved indifference to life, *see Mancini*, 853 N.E.2d at 225; *Suarez*, 844 N.E.2d at 727 ("First, a killing (whether intentional or unintentional) is not transformed into depraved indifference murder simply because the killer does not summon aid for the victim … Second, and irrespective of what the actor does or does not do after inflicting the fatal injury, depraved indifference murder is not made out unless the core statutory requirement of depraved indifference is established."). However, Judge Fox's conclusion was not based solely on Mr. Mabee's failure to summon aid for his victim, but rather included that factor as one of many underlying bases for his finding:

> Everything about this, the consumption of beer, the repeated chokings, which had to have stressed Jennifer who had been drinking, the escalation of the conduct to an electrical

cord, a situation where she could no longer protest, his experience with women who had been hurt by his choking, his acknowledgement that someone could be killed by a cord wrapped around the throat, his failure to seek help when Jennifer collapsed, his attempt to cover it up and his spinning the story to the police permitted the jury to conclude beyond a reasonable doubt that killing someone in pursuit of his appetite for the thrill of sexual asphyxia was inevitable, that this case was it and that he did not care if death was the result. Report at 29-30.

Therefore, Judge Fox did not determine that failure to summon assistance in itself constitutes depraved indifference to human life. Further, his assessment of Mr. Mabee's use of the electrical cord to the point where the victim could no longer protest reflects that he acknowledged Mr. Mabee's argument that the sexual encounter was consensual, and that even if use of the cord was consensual, Mr. Mabee's prolonged application of the cord "far exceeded the reasonable bounds of consensual sexual activity." Report at 17.

In *Suarez*, the New York Court of Appeals established that "depraved indifference is best understood as an utter disregard for the value of human life – a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not." *Suarez*, 844 N.E.2d at 730. The court of appeals distinguished depraved indifference murder from reckless homicide and clarified that the statutory provision that a defendant act "under circumstances evincing a depraved indifference to human life" constitutes an additional requirement of the crime, independent of recklessness and gravity of the risk. *Id.* ("reckless homicide cannot be elevated into depraved indifference murder merely because the actions of the defendant created a risk of death, however grave or substantial that risk may have been. Otherwise, manslaughter in the second degree would routinely and automatically become depraved indifference murder inasmuch as the victim (who was, after all, killed) was necessarily exposed to a grave or substantial risk of death."). The New York Court of Appeals thus slightly departed from its earlier formulation in *People v. Register*, in which a majority of the court held

that the Legislature did not intend that a mens rea element beyond mere recklessness be included in the definition of depraved indifference murder. *Register*, 457 N.E.2d at 708 ("The concept of depraved indifference was retained in the new statute not to function as a mens rea element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder.").

Judge Fox applied the Suarez formulation[1] of depraved indifference murder and concluded that Mr. Mabee's case was one of the "extraordinary cases involving conduct that

---

[1] The law of the State of New York regarding depraved indifference murder was articulated in *People v. Register*, 457 N.E.2d 704 (N.Y. 1983) and reaffirmed in *People v. Sanchez*, 777 N.E.2d 204 (N.Y. 2002). Following *Sanchez*, a series of decisions by the New York Court of Appeals slowly "pointed the law in a different direction." *Policano v. Herbert*, 859 N.E.2d 484, 489 (N.Y. 2006) (citing *People v. Hafeez*, 792 N.E.2d 1060 (N.Y. 2003); *People v. Gonzalez*, 807 N.E.2d 273 (N.Y. 2004); *People v. Payne*, 819 N.E.2d 634 (N.Y. 2004); *People v. Suarez*, 844 N.E.2d 721 (N.Y. 2005). The interpretation of the element "under circumstances evincing a depraved indifference to human life" incrementally changed "from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea," *Policano*, 859 N.E.2d at 495, culminating in *People v. Feingold*, which explicitly overruled *Register* and *Sanchez*. *People v. Feingold*, 852 N.E.2d 1163, 1167 (N.Y. 2006) ("[W]e conclude that the law has changed to such an extent that *People v. Register* and *People v. Sanchez* should no longer be followed. We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state."). In *Policano v. Herbert*, the New York Court of Appeals concluded that its post-*Sanchez* case law holding that depraved indifference to human life is a culpable mental state did not apply retroactively to the defendant, who was convicted in 2001 of depraved indifference murder under prior case law holding that depraved indifference was an objectively determined degree of risk. *See* Policano, 859 N.E.2d at 495; *see also Suarez*, 844 N.E.2d 721, 733 (N.Y. 2005) (G.B. Smith, Rosenblatt and R.S. Smith, JJ., concurring) (We expect, or at least hope, that the rule embodied in this and our other recent decisions will be applied prospectively ... Defendants who committed vicious crimes but who may have been charged and convicted under the wrong section of the statute are not attractive candidates for collateral relief after their convictions have become final.").

Mr. Mabee analogizes his case to *People v. Hill*, 648 N.E.2d 455 (N.Y. 1995), where the New York Court of Appeals applied *People v. Ryan*, 626 N.E.2d 51 (N.Y. 1993), retroactively after concluding that *Ryan* construed the words of a statute and established no new legal principle. However, Mr. Mabee misstates the case; the court did not hold that *Ryan* applied retroactively to a case on collateral review, but rather to a case pending on direct appeal. In *People v. Hill*, the court of appeals went on to say that in New York, even when a new legal principle is established, whether it is to be held retroactive depends upon three factors: the purpose of the new rule, the reliance on the old rule, and the effect of the new rule on the administration of justice. *People v. Hill*, 648 N.E.2d at 458 (citing *People v. Pepper*, 423 N.E.2d 366, 369 (N.Y. 1981). In *Policano*, the New York Court of Appeals applied these same *Pepper* factors to the post-*Sanchez* case law, and found that they strongly favored nonretroactivity. *See* Policano, 859 N.E.2d at 495 ("nonretroactivity poses no danger of a miscarriage of justice."). Mr. Mabee's arguments for retroactive application of recent New York Court of Appeals case law based on *Teague* are inapplicable; though these cases depart from established precedent, they do not implicate a bedrock procedural element. Mr. Mabee himself writes in his objections that "the elements of a statute ... is substantive not procedural." *See* Obj. at 5.

Thus, Petitioner's case should have been analyzed under *Register*, and his objections based on cases decided subsequent to the date his judgment became final are inapplicable. However, though *Suarez* should not have applied retroactively to the instant case, the circumstantial evidence that Judge Fox concluded allowed a jury to infer the mens rea of depraved indifference to human life would also have been sufficient evidence under the applicable objective *Register* and *Sanchez* formulation.

endangered only one person, where the evidence showed not just recklessness, but depraved indifference to human life." Suarez, 844 N.E.2d at 729. Analogizing to *People v. Roe*, in which the defendant instigated a game of "Polish roulette" and fired a shotgun at the victim at point-blank range without knowing whether the bullet was a "live" or "dummy" round, *see Roe*, 542 N.E.2d at 610, Judge Fox concluded that "the instant record permitted the jury to infer that Petitioner played a form of sexual asphyxia roulette with Jennifer Santiago." Report at 17. In *Roe*, the New York Court of Appeals applied the *Register* formulation of depraved indifference murder, and found that "the apt analogy is a macabre game of chance where the victim's fate – life or death – may be decreed by the flip of a coin or a roll of a die ... as in *Register*, where bullets which might kill or seriously injure someone, or hit no one at all, were fired at random into a crowded bar, the imminent risk of death was present here." *Roe*, 542 N.E.2d at 614. Judge Fox determined that a similarly imminent risk of death existed here:

> He repeatedly choked her even though she had been drinking and might well have been seriously injured from any of the chokings. He then escalated the choking from his hands to an electrical cord, applied with force continuously for fifteen (15) minutes and apparently without any awareness that he had far exceeded the reasonable bounds of consensual sexual activity. The absence of intent cannot alter the direst of consequences arising from, as the jury would easily have inferred, a selfcentered focus on his own potentially lethal sexual desires. Report at 17.

Thus, under the law of the State of New York as it existed on July 9, 2003, the date Mr. Mabee's judgment became final, Judge Fox's conclusion that there was sufficient evidence to sustain a state criminal conviction for depraved indifference murder was not clear error.

### B. Ineffective Assistance of Appellate Counsel

Judge Fox concluded that Grounds One, Three, and Five of Mr. Mabee's petition had been procedurally defaulted. Report at 13. However, he ultimately considered these claims and demonstrated that "preserved or procedurally defaulted, the claims do not entitle Petitioner to

federal habeas relief." Thus, Mr. Mabee's argument to obtain review of these grounds of his petition on the basis that he has shown cause for the default because his claim is so novel that its legal basis was not reasonably available to counsel, *see Murray v. Carrier*, 477 U.S. 478 (1986), is of no consequence. Additionally, his claim of ineffective assistance of appellate counsel was exhausted for federal habeas purposes and was not procedurally barred.

The Second Circuit Court of Appeals has adopted the test for ineffective assistance of trial counsel for claims of ineffective appellate counsel. *See Bunkley v. Meachum*, 68 F.3d 1518, 1521 (2d Cir. 1995). In order to sustain an ineffective assistance of counsel claim, a habeas petitioner must satisfy both elements of the two-part test as stated in *Strickland v. Washington*, 466 U.S. 668 (1984); a petitioner must demonstrate that "(1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense." *Bunkley*, 68 F.3d at 1521 (citing *Strickland*, 466 U.S. at 688, 694). The *Strickland* test also applies where ineffective assistance is claimed based on an action by the court. *See Tyson v. Keane*, 159 F.3d 732, 736 (2d Cir. 1998). Though there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, "appellate counsel's performance may be found constitutionally inadequate upon demonstration that significant and obvious issues were ignored while weaker arguments were pursued." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bunkley*, 68 F.3d at 1521 (2d Cir. 1995).

Mr. Mabee does not elaborate on how counsel confused intentional and depraved indifference murder, how she misapplied principles of law, what precedent she should have

cited, how her opinion in his case impeded her performance, or what conflict of interest existed at the trial level. However, even assuming that Mr. Mabee has demonstrated that appellate counsel's performance was constitutionally inadequate, he has failed to establish that he was prejudiced by appellate counsel's performance or by counsel's failure to raise any particular claim on direct appeal.

With regard to Mr. Mabee's argument that the jury could not understand the mens rea requirements for depraved indifference murder and reckless manslaughter and that the failure to define "the more serious mens rea" violated his due process rights, the law of the State of New York as it existed at the time Mr. Mabee's judgment became final maintained that the mens rea for both charges was the same: recklessness. *See Policano*, 859 N.E.2d at 491 (citing *Register*, 457 N.E.2d at 708) ("[Recklessness, pure and simple, is the mens rea for depraved indifference murder, which is 'distinguishable from manslaughter not by the mental element involved but by the objective circumstances in which the act occurs'; these circumstances define the degree of risk created by the defendant."). The jury was properly instructed that "the recklessness which subjected Jennifer Santiago to a grave risk of death had to be of such a degree that when viewed objectively it sustained depraved indifference murder whereas Petitioner had to be aware of and consciously disregard the substantial and unjustifiable risk that Jennifer Santiago's death would occur to sustain a manslaughter conviction." Report at 23.[2] Though Mr. Mabee is correct that

---

[2] While Judge Fox noted that this distinction was amply demonstrated in *Suarez*, this interpretation of depraved indifference is actually the *Register* formulation. *See Policano*, 859 N.E.2d at 494 ("The mens rea was recklessness and, as we held in *Register*, 'under circumstances evincing a depraved indifference to human life' defined the factual setting, viewed objectively, in which the risk-creating conduct occurred."). *Suarez* was the penultimate step in recognizing depraved indifference as a mens rea. *See Suarez*, 844 N.E.2d at 731 ("We depart slightly from the *Register* formulation, however, in that we make clear that the additional requirement of depraved indifference has meaning independent of the gravity of the risk); *Feingold*, 852 N.E.2d at 1167 ("We say today explicitly what the Court in *Suarez* stopped short of saying: depraved indifference to human life is a culpable mental state ... We overrule, by implication, only those depraved indifference reckless endangerment cases that rest on the premise that depraved indifference is measured not by a culpable mental state but by an objective assessment of the risk involved."). As this case should be analyzed under the *Register* formulation, *see supra* note 1 and accompanying text, the jury was properly instructed.

*People v. Hafeez* was decided while his case was still pending, *Register* had not yet been overruled, and the New York Court of Appeals cases that clarified that depraved indifference was a culpable mental state do not apply retroactively. *See supra* note 1 and accompanying text; *Henry v. Ricks*, 578 F.3d 134, 141 (2d Cir. 2009) (holding Due Process Clause does not require retroactive application of a new interpretation of a criminal statute by the New York Court of Appeals in collateral review of a conviction). Furthermore, the purpose of the New York Court of Appeals' "new interpretation of 'under circumstances evincing a depraved indifference to human life' [was] to dispel the confusion between intentional and depraved indifference murder, and thus cut off the continuing improper expansion of depraved indifference murder." *Policano*, 859 N.E.2d at 495. The facts of Mr. Mabee's case do not present confusion between intentional murder and depraved indifference murder, and thus *Hafeez* and the cases leading up to *Feingold* are factually and legally distinct. *See, e.g., Hafeez*, 792 N.E.2d 1060 (holding evidence was insufficient for depraved indifference murder where defendant and codefendant lay in wait for the deceased and the codefendant stabbed him to death with a knife).

Finally, regarding Mr. Mabee's argument that appellate counsel was deficient for failing to raise Ground Five of his petition, that the statutory distinction between reckless manslaughter and depraved indifference murder is unconstitutionally vague as applied to Petitioner, this Court agrees with Judge Fox's conclusion that this claim has no merit. Thus, Mr. Mabee cannot establish that but for his appellate counsel's failure to raise this ground on direct appeal, there is a reasonable probability that the outcome of his appeal would have been different.

## Conclusion

The Court has reviewed Judge Fox's comprehensive and well-reasoned Report and Recommendation and has determined that there is no clear legal error on the face of the record.

The Court also has considered Mr. Mabee's objections to the Report and Recommendation and has determined, after a *de novo* review, that the Report and Recommendation is correct with respect to those aspects to which he has objected. For the reasons stated in this Memorandum Order, this Court adopts the Report and Recommendation.

The Clerk of the Court is directed to close this case.

*It is so ordered.*

Dated: November 4, 2009

White Plains, New York

_____
Stephen C. Robinson
United States District Judge